IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN MURPHY,<br><br>       Plaintiff,<br><br>v.<br><br>ANTHONY WILLS, CONNIE DOLCE, MICHAEL MOLDENHAUER, JILIAN CRANE, ALISA DEARMOND, GLENN BABICH, ANGELA CRAIN, and DR. JOHN DOE #1,[1]<br><br>       Defendants. | Case No. 24-cv-475-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

      Plaintiff Steven Murphy, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Murphy has filed multiple motions for a temporary restraining order (Docs. 2, 15, 26). Defendants Anthony Wills, Dr. Glenn Babich, Michael Moldenhauer, Alisa Dearmond, and Jilian Crane oppose the motions (Docs. 27, 44). Murphy filed a reply brief after receiving Defendants' responses (Doc. 39), and Anthony Wills filed a supplemental response (Doc. 46). On May 29, 2024, the Court held an evidentiary hearing.

---

[1] Defendants Glenn Babich, Michael Moldenhauer, Alisa Dearmond, and Jilian Crane have identified themselves by their proper names (*See* Docs. 33-36). The Clerk of Court is DIRECTED to correct the docket to reflect Defendants' proper names.

1

## FACTUAL BACKGROUND

### A. Plaintiff's Motions

Murphy originally filed this case as a motion for temporary restraining order in an already pending case, *Murphy v. Willis*, Case No. 21-cv-559-DWD. Because the motion was unrelated to the claims in that lawsuit, it was severed into a new case. Murphy was directed to file a formal complaint in this case (Doc. 5).

On March 1, 2024, Murphy filed his Complaint alleging deliberate indifference in the treatment of his stomach ulcers and undiagnosed stomach conditions (Doc. 6). After a review of the claims pursuant to 28 U.S.C. § 1915A, he was allowed to proceed on the following counts:

> Count 1: Eighth Amendment deliberate indifference claim against Anthony Wills, Connie Dolce, Michael Moldenhauer, Alisa Dearmond, Jilian Crain, Angela Crain, Dr. Glen Babich, and Dr. John Doe #1 for refusing to provide Murphy with medical care or an outside referral for his stomach pain and bleeding.
>
> Count 2: Illinois medical negligence claim for refusing to provide Murphy with medical care or an outside referral for his stomach pain and bleeding.

(Doc. 10, pp. 3-4).

Murphy's Complaint alleges that even though he has been diagnosed with stomach ulcers, he has not received any treatment for his ulcers and continues to suffer from stomach pain (Doc. 10, p. 2). Starting in February 2024, Murphy allegedly has suffered from severe pain in his left side, as well as dizziness, fatigue, fever, and pain (*Id.*). He also reports blackish blood during bowel movements (*Id.*). Despite his continued complaints of symptoms, Defendants have only prescribed him acid reflux medications

and stool softeners (*Id.*). They have refused his request for a referral to a GI specialist or for further testing (*Id.* at pp. 2-3). Murphy alleges that the medical providers merely submit requests for the same medical tests he had in the past, tests that would not detect an internal condition (Doc. 2, p. 1).

In a subsequent motion for injunctive relief, Murphy alleges that he has tried to obtain medical care for his stomach issues for over a year, but medical staff continue with the same medical tests (Doc. 15, p. 1). He further alleges that the prison healthcare unit does not have the proper equipment to diagnose internal injuries, but Defendants still refuse to send him out for care (*Id.*).

On February 12, 2024, Murphy alleges that he had a high fever, dizziness, and pain. He also had blackish blood in his bowel movements (Doc. 15, p. 2). Although he requested medical care, correctional officers informed Murphy that healthcare unit staff refused to see him (*Id.*). They also ignored every sick call request he sent in after February 12, 2024. Murphy acknowledges receiving a blood test on February 20, 2024, but he does not indicate the nature or results of the test (*Id.*). In his reply brief, Murphy argues that he has received no further treatment since February 20, 2024, despite continued complaints of bloody stool, dizziness, and fatigue (Doc. 39).

B. **Defendants' Response**

In response to Murphy's numerous motions, Defendants argue that Murphy has received medical care for his symptoms. They argue that Murphy's complaints of stomach pain and blood with bowel movements is not a new occurrence. Murphy filed a similar motion for preliminary injunction in August 2021 in his then pending case *Murphy*

*v. Wills*, Case No. 21-cv-559-DWD (Doc. 13). In that case, he acknowledged being diagnosed with hemorrhoids and receiving antacid medication. *See Murphy*, Case No. 21-cv-559-DWD (Doc. 70, p. 1). Medical records in this case show that Murphy has been seeing healthcare staff for complaints of abdominal pain since 2018 (Docs. 44-1, 44-2). On July 13, 2021, Murphy received an evaluation by a gastroenterologist who recommended an EGD (an endoscopic procedure), a colonoscopy, and a stool sample (Doc. 44-1, pp. 268, 307-310). *See also Murphy*, Case No. 21-cv-559-DWD (Doc. 27-1, pp. 63-66). It was noted that he had bloating, abdominal pain, and bleeding (Doc. 44-1, p. 308). Although the procedure was scheduled for November 2021, the procedure was canceled and reset (Doc. 44-1, p. 492). On November 10, 2021, Murphy complained of constipation, and he was prescribed Milk of Magnesia, Fiber, and Colace (*Id.* at p. 493; Doc. 27-1, p. 6). On December 23, 2021, Murphy had the EGD, and the colonoscopy was rescheduled for February 9, 2022 (Doc. 44-1, pp. 504, 527, 531-536). Murphy had mostly normal findings on the EGD except for mild antral gastritis (Doc. 44-1, pp. 574-75). The colonoscopy resulted in a diagnosis of Stage 2 internal hemorrhoids. The hemorrhoids were banded during the colonoscopy (Doc. 44-1, pp. 537, 587-590, 605-07; Doc. 27-2, p. 2). Murphy continued to complain of bleeding during bowel movements. and the specialist recommended a sigmoidoscopy, flexible, with hemorrhoid banding (Doc. 44-1, p. 545). On April 18, 2022, Murphy received that procedure, and large internal hemorrhoids were again noted and banded. (Doc. 27-2, p. 2; Doc. 44-2, p. 62-63, 251-276).

Since Murphy's banding procedure, Defendants contend that Murphy has continued to receive care (Doc. 27-2). In June 2022, Murphy complained of blood in his

stool. X-rays and blood work were ordered (*Id*. at p. 2; Doc. 44-2, p. 80-82). Murphy was also prescribed a stool softener and Fiber-Lax tabs (*Id*.). His blood work was normal (*Id*.). In August 2022, an abdominal x-ray revealed a large amount of stool present (Doc. 27-2, p. 2).

In April 2023, Murphy again complained of bleeding and abdominal pain but refused a rectal exam (*Id*. at p. 3; Doc. 44-2, pp. 125-126). An x-ray and blood work were ordered (Doc. 44-2, p. 128). The radiology report noted that the bowel gas pattern was nonobstructive (*Id*. at pp. 284). In December 2023, Murphy again complained of symptoms and requested an x-ray (Doc. 27-2, p. 3). On December 10, 2023, Murphy was examined by a registered nurse, but an examination found no evidence of tenderness, abdominal distention, or jaundice (*Id*.; Doc. 44-2, p. 214-215). Murphy was directed to return if his symptoms worsened. On December 22, 2023, Murphy met with a nurse practitioner for gastroesophageal reflux diseases (known as GERD), stomach pain, and vomiting after eating (*Id*. at p. 4; Doc. 44-2, p. 219). Blood tests and an x-ray were ordered. The x-ray revealed evidence of constipation (Doc. 44-2, p. 230, 474). There was no evidence of an obstruction or a mass (*Id*. at p. 474). The blood test was normal (*Id*. at p. 489). On January 19, 2024, the nurse practitioner ordered medication for Murphy's constipation (Doc. 27-2, p. 4; Doc. 44-2, p. 230).

On February 20, 2024, Murphy received another blood test. His results were normal except for high bilirubin levels (Doc. 44-3, p. 1). On April 18, 2024, Murphy again complained of abdominal pain and blood in his stool (Doc. 46-1, p. 2). Although the bleeding stopped two weeks prior, Murphy still complained of fatigue and dizziness (*Id*.).

5

Blood tests were ordered, and he was referred to physical therapy for additional complaints of left back pain (*Id.* at pp. 6-7). On April 26, 2024, Nurse Practitioner ("N.P.") Alisa Dearmond spoke with Dr. Babich about Murphy's bilirubin levels (*Id.* at p. 8). The decision was made to wait for the results of the most recent blood test to determine if any additional tests or referrals were needed (*Id.*).

### C. Evidentiary Hearing

On May 29, 2024, the Court held an evidentiary hearing on Murphy's motion and heard testimony from both Murphy and N.P. Dearmond. Murphy acknowledged that he received a blood test and x-rays for his back on April 18, 2024. But Murphy testified that he had not yet heard the results of those tests. He noted that he had a lump on his abdomen above his naval and believes that he may have issues with his pancreas or intestines. He received two sessions of physical therapy for his lower back and was able to fully participate in both sessions. Murphy testified that he last saw N.P. Dearmond at his April 18 appointment and last saw a gastrointestinal specialist in 2022. Although Murphy acknowledged that a CT scan was ordered at his last appointment, he had not received any further information regarding scheduling of that test.

N.P. Dearmond acknowledged meeting with Murphy on April 18 and ordering a number of tests. She ordered a CT scan, with and without contrast, of both his head and pelvis, as well as blood tests and x-rays. She rechecked his bilirubin levels because the levels had previously been elevated; the results were normal. Murphy's x-rays both in January and April showed evidence of constipation, and N.P. Dearmond prescribed additional medication in April to treat his continued constipation. Although his bilirubin

6

levels were only slightly elevated, N.P. Dearmond scheduled a CT scan in order to view his pancreas and liver. She noted that he had not yet been referred out to a specialist because she was waiting on the CT scan and results. She also noted that a specialist would want to see the CT results prior to scheduling an appointment with a patient. N.P. Dearmond stated that it is her normal practice to follow-up with an inmate within two weeks of the receipt of medical test results, but acknowledged that a follow-up with Murphy had not yet been scheduled. She put in a request for a follow-up with the scheduler and would check on the status of the scheduling after the hearing. She also testified that Murphy was currently scheduled for a CT scan in June.

## LEGAL STANDARDS

A temporary restraining order may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of

the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether the plaintiff's claim "has some likelihood of success on the merits." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). Once a plaintiff has met his burden, the Court must weigh "the competing harms to the parties if an injunction is granted or denied and also consider[] the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id*. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## DISCUSSION

Simply put, Murphy is not entitled to injunctive relief at this time because he is currently receiving care for his medical conditions. At the evidentiary hearing, Murphy acknowledged that he recently received a blood test and x-ray. Although he did not know the results of those tests, N.P. Dearmond explained the results, noting that the blood work was normal, and the x-rays revealed continued constipation. She noted that he was prescribed additional medication to treat his constipation and agreed to check with the prison pharmacy after the hearing to ensure that Murphy was receiving his new

8

prescriptions. In June, he is also scheduled for CT scans of both his head and pelvic region. N.P. Dearmond testified that she ordered the CT scans to ensure there were no issues with his pancreas and liver after previously high bilirubin levels. Murphy testified that he believes there may be issues with his pancreas and intestines and wants answers as to what is causing his continued pain. He is now scheduled for a CT scan of his pelvic region. He has also received medication for his constipation and additional testing to determine the cause of his ailments. Thus, there is no evidence of deliberate indifference to Murphy's current medical needs, nor has Murphy demonstrated that he is entitled to injunctive relief at this time.

## CONCLUSION

For the reasons set forth above, Murphy motions for injunctive relief (Docs. 2, 15, 26) are **DENIED**.

**IT IS SO ORDERED.**

**DATED:  May 30, 2024**

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**