IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN MURPHY,<br><br>      Plaintiff,<br><br>v.<br><br>ANTHONY WILLS, CONNIE DOLCE, MICHAEL MOLDENHAUER, ALISA DEARMOND, DR. GLENN BABICH, ANGELA CRAIN, JILIAN CRANE, and DR. RAJESH SHARMA,[1]<br><br>      Defendants. | Case No. 24-cv-475-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Steven Murphy, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Murphy alleges that Defendants were deliberately indifferent to his serious medical needs by refusing to provide medical care for his stomach pain and bleeding (Doc. 10, p. 3).

This matter is before the Court on Murphy's Motion for Notice and Request to Re-File his Motion for Preliminary Injunction (Doc. 60). Both the medical defendants (Doc. 63) and IDOC defendants (Doc. 65) filed a response to the motion. Murphy filed a

---

[1] Dr. Glenn Babich, Michael Moldenhauer, Alisa Dearmond, and Jilian Crane have now identified themselves by their proper names (Doc. 63). The Clerk of Court is DIRECTED to CORRECT the docket to reflect Defendants' proper names.

1

reply (Doc. 66). He also recently filed a motion to compel related to his motion for preliminary injunction (Doc. 67).

## BACKGROUND

This is Murphy's fourth motion for a preliminary injunction. He originally filed a motion for temporary restraining order and/or preliminary injunction in another of his pending cases and the matter was opened as a new case (Docs. 1 and 2). Murphy was directed to file a formal Complaint in the newly opened case (Doc. 5). He filed a Complaint (Doc. 6) and subsequently filed two additional motions seeking injunctive relief (Docs. 15, 26). Murphy's Complaint alleged that he suffered from undiagnosed stomach pain and bleeding (Doc. 10, p. 2). Although he requested tests to rule out stomach cancer, as well as a referral to a GI specialist, all of his requests for care were denied (*Id.*). He alleged Defendants were deliberately indifferent in treating his condition because they insisted he had ulcers and prescribed him medications that did not resolve his symptoms (*Id.*).

On May 29, 2024, the Court held an evidentiary on Murphy's pending motions for injunctive relief (Doc. 49). Murphy's motions were denied because the evidence presented at the evidentiary hearing demonstrated that Murphy was receiving care for his medical concerns. He acknowledged that he received an x-ray and blood test (Doc. 50, p. 8). The blood test was normal, and the x-ray revealed constipation. Murphy received medication to alleviate his constipation (*Id.* at pp. 8-9). Murphy did have high levels of bilirubin, and Nurse Practitioner Alisa Dearmond informed the Court that Murphy was scheduled for a CT scan to rule out any issues with his pancreas and liver (*Id.* at p. 9).

Because it was clear that Murphy was receiving medical care for his ailments, the Court found that a preliminary injunction was not warranted.

On September 9, 2024, however, Murphy filed the pending motion for leave to re-file his motion for preliminary injunction (Doc. 60). Murphy argued that Dearmond was required to submit Murphy's test results to the Court, but she failed to comply with the Court's Order (Doc. 60, p. 1). Murphy further alleged that his CT scan scheduled for June 2024 was canceled in what Murphy believes was an act of retaliation by Dearmond (*Id.*). He was also scheduled for an appointment with the nurse practitioner in August 2024, but that appointment was also canceled by Dearmond and Crane (*Id.*). Murphy alleged that Defendants were retaliating against him and refused to provide him with medical care and diagnostic testing to determine the cause of his internal bleeding (*Id.* at pp. 1-2). Murphy requested to re-file his motion for preliminary injunction to seek testing and treatment.

In response to Murphy's motion, Defendants Dr. Glenn Babich, Nurse Practitioner ("NP") Michael Moldenhauer, NP Alisa Dearmond, and NP Jilian Crane informed the Court on the status of Murphy's current medical care. According to Murphy's medical records, his CT scan was set for June 11, 2024 (Doc. 63-1, pp. 14, 17). He was also scheduled to be placed in the infirmary the day prior to the CT scan (*Id.* at p. 17). But when the nurse went to admit Murphy to the infirmary on June 10, 2024, in preparation for his procedure, Murphy refused to be admitted (*Id.* at p. 18). In Murphy's reply brief, he argues that he did not refuse but that the infirmary was unable to accommodate his protective custody status (Doc. 66, p. 1). Murphy also argues that he was told he did not

3

have to stay in the infirmary for one night and contends that his stay in the infirmary was not necessary (*Id.*). Despite Murphy's contention that he did not refuse placement in the infirmary, he signed a refusal form dated June 10, 2024 (Doc. 63-1, p. 39).

But whether Murphy refused to be housed in the infirmary prior to his CT scan is irrelevant because his refusal did not impact his scheduled CT scan. Murphy was allowed to prepare for the furlough in his cell (Doc. 63-1, p. 18). Unfortunately, however, Murphy's CT scan was canceled the following day due to a security and transportation issue (Doc. 63, p. 3). The CT scan was rescheduled for late September 2024 (*Id.*).

On August 5, 2024, Murphy presented to the healthcare unit with hemorrhoids (Doc. 63-1, p. 23). He was prescribed hemorrhoid cream and directed to return if his symptoms failed to improve within two weeks (*Id.*). On August 21, 2024, Murphy was scheduled for a sick call appointment, but a note in his record indicates that he refused the appointment (*Id.* at p. 24). The refusal form is signed by a correctional officer and indicates that Murphy refused to sign the form (*Id.* at p. 40). On August 22, 2024, Dearmond entered a note in Murphy's medical records indicating that he was not seen that day during the nurse practitioner line (*Id.* at p. 22).

The medical defendants noted that Murphy was scheduled for his CT scan at the end of September and argued that he was not entitled to injunctive relief. The IDOC defendants, including Angela Crain, Connie Dolce, and Anthony Wills filed a response (Doc. 63) essentially adopting the medical defendants' response. They also argued that Murphy's initial CT scan was canceled due to security and transportation issues and was rescheduled for the end of September (*Id.*).

Murphy filed a reply brief (Doc. 66) refuting Defendants' responses. He argued that the Defendants lied to the Court and were denying him care as an act of retaliation. Murphy argued that after his CT scan was canceled, the appointment was not rescheduled until he filed his motion. He denied that he refused to be placed in the infirmary prior to his CT scan or that there was a security or transportation issue at the prison. He argued that other inmates were sent on medical furloughs on that date. He also denied being prescribed hemorrhoid cream. Instead, he alleged that he was merely told that he would be scheduled to see the nurse practitioner. Murphy further denied that he refused his appointment with the nurse practitioner and argued that the refusal form was falsified by defendants. Instead, Murphy alleged Officer Loesing, the officer who signed the medical refusal, told Murphy that the nurse practitioner canceled his appointment (Doc. 66, p. 2). Murphy further argued that the Court initially erred in denying him a preliminary injunction because the defendants had no intention of providing him with medical care.

Murphy also recently filed a motion to compel (Doc. 67). In that motion, he noted that he received a CT scan on August 1, 2024, but had not yet received the results of that test. He also argued that he had not seen a nurse practitioner or any other medical provider. He argued that he was being retaliated against and denied medical care.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay

5

Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

The Court finds that Murphy is not entitled to the injunctive relief he seeks because he has already received all of the relief he requested. Murphy argued that he had not received any of the results of his medical tests discussed at the Court's May evidentiary hearing, but the results of those tests were attached to Defendants' response (Doc. 63-1). Specifically, the medical records from his x-ray demonstrate that his vertebra were normal (*Id*. at p. 26). Blood test results from the same time period were also attached to Defendants' response. Thus, he has now received the results of his prior tests.

Although Murphy's motion for injunctive relief specifically sought a CT scan, his most recent filing acknowledges that he received a CT scan (Doc. 67, p. 1). There appears to be some discrepancy as to when the CT scan occurred, but Murphy's latest motion acknowledges that he has now received the requested CT scan (Doc. 60).[2] Further, there is simply no evidence, other than Murphy's own belief, that Defendants are attempting to retaliate against Murphy. Defendants note that the original CT scan was canceled due to security issues and was rescheduled.[3] Murphy acknowledges that he has now received that scheduled CT scan. Thus, his request for injunctive relief is moot.

---

[2] Murphy's motion to compel alleges that he received his CT scan on August 1, 2024. But that date predates his motion seeking a CT scan (Doc. 60) and predates Defendants' responses (Docs. 63, 65). Further, Defendants indicated that Murphy's CT scan was scheduled for the end of September (Doc. 63, p. 4; 65, p. 2).

[3] The Court notes that Defendants failed to provide any documentation supporting their contention that the CT scan was canceled due to security and/or transportation issues. Nothing in the medical records indicates that the appointment was canceled nor did Defendants attach an affidavit from any official at the prison who would have knowledge of the scheduled medical procedure. Although the reasoning for the cancellation of the CT scan is murky, all of the parties

Finally, Murphy notes in his motion to compel that he has not received the results of his CT scan. The Court also has not received an update on Murphy's current care. Thus, the Court **ORDERS** Defendants to file a Notice with the Court on the current state of Murphy's medical care. Defendants should also attach updated medical records, to include Murphy's CT scan results. Defendants' status update is due **December 23, 2024**.

## CONCLUSION

For the reasons set forth above, Murphy's motion to re-file (Doc. 60) and his motion to compel (Doc. 67) are **DENIED** as moot. Defendants are **DIRECTED** to file a Status Report with the Court with updated medical records to include Murphy's recent CT scan.

**IT IS SO ORDERED.**

**DATED:  November 25, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

acknowledge that the CT scan was rescheduled, and Murphy admits that he has now received the CT scan.