# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-475-MAB |
| | ) |
| ANTHONY WILLS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Plaintiff Steven Murphy's Motion to Compel (Doc. 74), Motion for Preliminary Injunction (Doc. 75), and "Motion for Notice and Motion to Appoint Counsel" (Doc. 84). For the reasons stated below, the motions are denied.

**A. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Doc. 75)**

The Court begins with Plaintiff's motion for preliminary injunction, which is his fifth and was filed on February 11, 2025 (Doc. 75). Because this is the first of Plaintiff's request for injunctive relief that the undersigned has handled,[1] the undersigned reviewed the procedural history of Plaintiff's previous requests and summarizes it here.

On February 21, 2024, Plaintiff filed a motion for temporary restraining order in

---

[1] All parties appearing in this matter consented to a United States Magistrate Judge conducting all proceedings, 28 U.S.C. § 636(c); FED. R. CIV. P. 73, and the case was accordingly reassigned to the undersigned on February 25, 2025 (Doc. 83).

another case: SDIL case no. 21-cv-559-DWD, seeking medical care for a stomach condition. *Murphy v. Willis*, SDIL case no. 21-cv-559-DWD, Doc. 160. In that case, the presiding judge - Judge Dugan - determined that Plaintiff's allegations regarding the stomach condition were outside the scope of the claims in that lawsuit, and his motion was therefore severed into the instant case. *Id.* at Doc. 161. Plaintiff was directed to file a formal complaint in the instant case, (Doc. 5), which he did on March 1, 2024 (Doc. 6). His allegations, as summarized in the Merit Review Order, are that he suffers from stomach pain and bleeding, which medical personnel at Menard have previously attributed to stomach ulcers, but he has not received proper treatment for his ulcers (Doc. 10, p. 2). He alleged that in February 2024, he began suffering from severe pain in his left side, as well as dizziness, fatigue, fever, and blood in his stools (*Id.*). He claimed that Defendants had refused his requests to see a gastroenterologist or to order appropriate testing (such as fecal occult blood test) (*Id.* at pp. 2–3). Rather, Defendants kept prescribing him acid reflux medications and stool softeners and running the same tests, which Plaintiff claimed would not detect an internal condition (*Id.*).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against Anthony Wills, Connie Dolce, Michael Moldenhauer, Alisa Dearmond, Jilian Crain, Angela Crain, Dr. Glen Babich, and Dr. Rajesh Sharma (who was initially identified as John Doe #1) for refusing to provide Plaintiff with medical care or an outside referral for his stomach pain and bleeding.
>
> **Count 2:** Illinois medical negligence claim for refusing to provide Plaintiff with medical care or an outside referral for his stomach pain and bleeding.

(Doc. 10, pp. 3-4; Doc. 56). While waiting for Defendants to be served and appear in the case, Plaintiff filed two more motions for preliminary injunctive relief (Docs. 15, 26). He alleged that Defendants ignored every sick call request that he had submitted since February 12, 2024 (Doc. 15, p. 2).

The IDOC Defendants and the Wexford Defendants filed responses in opposition to Plaintiff's motions for preliminary injunctive relief (Docs. 27, 44, 46; *see also* Doc. 39 (Plaintiff's reply)),[2] and Chief District Judge Nancy Rosenstengel held a hearing as to those motions on May 29, 2024 (Doc. 49). The evidence showed that Plaintiff had been seeing healthcare staff for complaints of abdominal pain since 2018 (*see* Doc. 50, p. 4). He was evaluated by a gastroenterology nurse practitioner in July 2021, who ordered an EGD and a colonoscopy (*Id.*).[3] The EGD was completed in December 2021, and the results were mostly normal except for mild antral gastritis (*Id.*). The colonoscopy was done in February 2022 and revealed stage 2 internal hemorrhoids, which the physician banded during the colonoscopy (*Id.*). At a follow-up appointment two weeks after the colonoscopy, Plaintiff continued to complain of pain in the epigastric region with

---

[2] The "IDOC Defendants" are employed by the IDOC and represented by the Illinois Attorney General's Office. They are Anthony Wills, Connie Dolce, and Angela Crain. The "Wexford Defendants" are employed by Wexford and represented by attorneys at Cassiday Schade, LLP. They are Mike Moldenhauer, Alyssa Dearmond, Dr. Glenn Babich, Julia Crane, and Dr. Rajesh Sharma.

[3] EGD is short for Esophagogastroduodenoscopy, which is also known as an Upper Endoscopy - subsequent medical note says he had upper and lower. During the procedure, a gastroenterologist uses a scope to view the inside of the patient's esophagus, stomach, and duodenum (the upper part of the small intestine). The procedure is used to diagnose and treat acid reflux, stomach ulcers, celiac disease and other digestive tract problems. CLEVELAND CLINIC, *EGD Procedure (Upper Endoscopy)*, https://my.clevelandclinic.org/health/procedures/22549-egd-procedure-upper-endoscopy (last visited May 28, 2025).

vomiting and blood in his stools (*Id.*; Doc. 44-1, p. 612). The gastroenterology nurse practitioner recommended Plaintiff increase fiber in his diet and take omeprazole every day (Doc. 44-1, pp. 613–15). She also recommended a second procedure to band Plaintiff's internal hemorrhoids, which was done in April 2022 (Doc. 50, p. 4).

Plaintiff continued to receive care throughout 2022 and 2023 at Menard, namely in the form of blood work, abdominal x-rays, and over-the-counter medications, like stool softener and Fiber-Lax (Doc. 50, pp. 4–5). In February 2024, Plaintiff's blood test showed slightly elevated bilirubin levels (*Id.* at pp. 5, 7). In April 2024, Plaintiff complained of continued abdominal pain and blood in his stools, as well as fatigue, dizziness every day, and lower back pain due to a prior injury (Doc. 46-1, pp. 2–3). Nurse Practitioner ("NP") Alisa Dearmond ordered additional blood tests, an x-ray of his back, a CT scan of his head and pelvis (to ensure there were no issues with his pancreas and liver after previously high bilirubin levels), and she also referred him to physical therapy and the eye doctor (*Id.*). NP Dearmond also spoke with Dr. Babich about Plaintiff's bilirubin levels, and the decision was made to wait for the results of the most recent blood test to determine if any additional tests or referrals were needed (*Id.* at p. 8).

At the May 29, 2024, hearing, Plaintiff testified that he had a lump on his abdomen above his naval and believes that he may have issues with his pancreas or intestines (Doc. 50, p. 6). NP Dearmond testified that the April bloodwork showed Plaintiff's bilirubin levels were normal (*Id.*). The x-rays both in January and April showed evidence of constipation for which Plaintiff was prescribed medication (*Id.*). Plaintiff was scheduled for the CT scans in June (*Id.* at p. 7). NP Dearmond was waiting on those results to

determine if Plaintiff needed to be referred to a specialist (*Id.*)

Judge Rosenstengel issued an order on May 30, 2024, denying Plaintiff's motions for preliminary injunctive relief (Doc. 50). She determined that Plaintiff was not entitled to injunctive relief at that time because he was currently receiving care for his medical conditions (*Id.*, pp. 8–9).

On September 6, 2024, Plaintiff filed a fourth motion for preliminary injunctive relief (Doc. 60). He alleged that he had not received the results of his recent medical tests. He further alleged that his CT scan in June and an appointment with the nurse practitioner in August had both been canceled, which he believed were acts of retaliation. Defendants filed a response, as ordered (Doc. 61), and provided an update on the status of Plaintiff's medical care (Docs. 63, 65). The CT scan in June was indeed canceled due to a purported security and transportation issue, and it was rescheduled for late September (*see* Doc. 69, p. 4). On August 5, 2024, Plaintiff presented to nurse sick call with hemorrhoids (Doc. 63-1, p. 23). He was given hemorrhoid cream and directed to return if his symptoms failed to improve within two weeks (*Id.*). On August 21, 2024, Plaintiff was scheduled for nurse sick call, but a note in his record indicates that he refused the appointment (*Id.* at pp. 24, 40). On August 22, 2024, NP Dearmond entered a note in Plaintiff's medical records indicating that he was not seen that day on the nurse practitioner line (*Id.* at p. 22). Plaintiff filed a reply, refuting Defendants' contentions about the CT scan in June (Doc. 66). He also denied that he was given hemorrhoid cream in August and that he refused the nurse sick call appointment (*Id.*).

Plaintiff's motion was denied without a hearing (Doc. 69). Judge Rosenstengel

determined that Plaintiff was not entitled to any injunctive relief because he had already received all of the relief that he had requested (*Id.* at p. 7). Specifically, he was given the results of his prior blood work and x-rays and he admitted that he had received a CT scan (*Id.* at p. 7, n.2). Defendants, however, were ordered to provide a status report with Plaintiff's updated medical records, including the results of the CT scans (*Id.* at p. 8).

Defendants filed their status report on December 18, 2024, along with updated medical records (Doc. 72). The medical records show that the CT scans of Plaintiff's head and pelvis were done on September 27, 2024 (Doc. 72-1, pp. 14, 22, 25–26, 29). The results of both were unremarkable (*Id.*). The results were received by the prison on October 2, 2024, and NP Dearmond reviewed them on October 7, 2024 (*Id.* at p. 16). She ordered a follow-up appointment to discuss the results with Plaintiff (*Id.*), which apparently never occurred. Defendants noted in their December 18, 2024, status report that Plaintiff had been placed on the sick call line to be seen by Dr. Comparin regarding the results of the CT scans (*see* Doc. 72, para. 18).

In his current motion for preliminary injunctive relief, filed on February 11, 2025, Plaintiff claims that he continues to have issues with receiving medical treatment from Defendants (Doc. 75, p. 1). He alleges that he noticed in November 2024 that a lump had developed on the center of his stomach,[4] and he has been "constantly" vomiting stomach acid and having stomach and chest pain (*Id.*). He claims that he has been "constantly"

---

[4] The Court notes, however, that Plaintiff previously testified at an evidentiary hearing in May 2024 that he had a lump on his abdomen above his naval (Doc. 50, p. 6).

submitting sick call requests seeking medical treatment and to be examined by a doctor or nurse practitioner (*Id.*). He requests a preliminary injunction to receive the medical treatment necessary to figure out why he has developed a lump on his stomach, such as an examination and "proper testing" by a gastroenterologist (*Id.* at p. 2). He further states that he has yet to see Dr. Comparin or any other practitioner for a follow-up regarding his CT scans (*Id.* at p. 2). The Wexford Defendants filed a response in opposition to Plaintiff's motion for preliminary injunctive relief (Doc. 82), but the IDOC Defendants did not. Plaintiff did not file a reply brief.

### LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is available only when "the movant, *by a clear showing,* carries the burden of persuasion." *Goodman v. Ill. Dep't of Fin. & Prof'l Reg.*, 430 F.3d 432, 437 (7th Cir. 2005) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Additionally, mandatory preliminary injunctions like the one sought here, which would require an affirmative act by the defendant, are "ordinarily cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)).

A plaintiff seeking a preliminary injunction must demonstrate that he is likely to succeed on the merits of his claim, he has no adequate remedy at law, and that he would suffer irreparable harm without the preliminary injunctive relief. *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If the plaintiff makes this showing, then the court proceeds to a balancing analysis,

weighing the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). Ultimately, the plaintiff must show "that the balance of equities tips in his favor." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754 (2021) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)).

## DISCUSSION

The Wexford Defendants question whether Plaintiff's motion was a request for the Court to reconsider its prior Orders denying him injunctive relief or whether it was a new, independent motion for injunctive relief (*see* Doc. 82). To the extent that Plaintiff's submission can be construed as a motion to reconsider, it must be denied because Plaintiff failed to identify any error that the Court made, let alone one that would justify reconsideration of the previous Orders (*see* Doc. 75). *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.") (citation omitted).

Plaintiff's motion, if construed as a new, independent motion for preliminary injunctive relief, must likewise be denied for several reasons. First, Plaintiff has failed to substantiate any of his allegations with evidence. *See, e.g.,* 11A FED. PRAC. & PROC. CIV. § 2949 (3d ed.) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support . . . a motion for a preliminary injunction. . .

."). Plaintiff's motion was not verified (*see* Doc. 75).[5] He did not submit a separate affidavit (or unsworn declaration) attesting to any facts (*see* Doc. 75).[6] Nor did he submit any other documentation or exhibits to support his claims (*see* Doc. 75).

Second, even if the Court were to consider Plaintiff's unsupported statements, they are insufficient to establish that he is entitled to the extraordinary and drastic remedy of a preliminary injunction. The lump on Plaintiff's stomach is not new. As previously mentioned, Plaintiff testified at the evidentiary hearing in May 2024 that he had a lump on his abdomen above his naval (Doc. 50, p. 6). Judge Rosenstengel thus considered the lump before she denied his initial motion for injunctive relief (*see* Doc. 50, p. 6).

As for Plaintiff's allegation that he has been "constantly" submitting sick medical requests, which apparently go unanswered, it is simply too vague to warrant any relief. Plaintiff failed to include any specific facts about his requests, such as the dates his requests were submitted, who they were submitted to, the manner in which they were submitted, etc. *See* FED. R. CIV. P. 7(b)(1) (motions must "state with particularity the grounds for seeking the order"). Without details of some sort, the Court does not have enough information to meaningfully evaluate whether Defendants are acting with

---

[5] A verified motion is one in which the movant has declared the factual allegations contained therein to be true under penalty of perjury or sworn them to be true in front of a notary. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). The sworn statements of fact may be treated as the equivalent of an affidavit and constitutes competent evidence. *See Dale*, 376 F.3d at 655.

[6] *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath," like a notary.) (citations omitted); 28 U.S.C. § 1746 (unsworn declaration can be used in place of a sworn affidavit so long as it declares "under penalty of perjury" that the content is "true and correct," or uses other language "substantially . . . [similar in] form").

deliberate indifference, and thus Plaintiff has failed to show he is likely to succeed on the merits of his claim.

Regarding the follow-up appointment to discuss the results of the CT scans, the Court notes that such follow-up is customary at Menard[7] and that NP Dearmond initially ordered the follow-up on October 7, 2024 (Doc. 72-1, p. 16). However, that appointment still had not happened some two months later, which Defendants implicitly acknowledged in their December 18, 2024, status report when they represented to the Court that Plaintiff had been placed on the sick call line to be seen by Dr. Comparin regarding the results of his CT scan (Doc. 72, para. 18). But, it appears this appointment apparently failed to come to fruition, as Plaintiff claims in his current motion that he had yet to be seen (Doc. 75). In their response to Plaintiff's motion, the Wexford Defendants did not address Plaintiff's contention that he still has not been provided with a follow-up appointment to discuss the test results (*see* Doc. 83). The failure to provide a follow-up appointment and failure to correct this oversight, if true, is concerning. However, there is nothing that suggests that Defendants' failure to discuss the CT scan results with Plaintiff exposes him to any harm, let alone immediate and irreparable harm.

For these reasons, Plaintiff's motion for preliminary injunctive relief is denied.

---

[7] NP Dearmond testified at the evidentiary hearing on May 29, 2024, that it is her normal practice to follow-up with an inmate within two weeks of the receipt of medical test results (Doc. 50, p. 7). The Court also notes that that the IDOC agreed, as part of the 2019 Consent Decree in *Lippert v. Ghosh*, that after a prisoner receives offsite medical services, a routine follow-up appointment must be conducted by facility medical staff no later than five business days after the prisoner returns from an offsite service. *Lippert v. Ghosh*, CDIL Case No. 10-cv-4603, Doc. 1238, p. 13, section III(H)(2).

If Plaintiff believes that he continues to be deprived of constitutionally adequate medical care for his stomach condition and the deprivation is serious enough to warrant immediate equitable relief, he may file a renewed motion for preliminary injunction. To be clear though, any such motion must be supported by a sworn affidavit/unsworn declaration and other such evidence as may be necessary to detail his *current* situation, it must describe Defendants conduct, and it must address any claim that he will suffer irreparable harm absent the relief he seeks. Any future motion for preliminary injunction that is based on events that have occurred since the complaint in this matter was filed on March 1, 2024, must also be accompanied by a separate motion for leave to supplement his Complaint with allegations regarding the purported deficiencies in his subsequent medical care. *See* FED. R. CIV. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.") *See also Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg,* 644 F.3d 353, 356 (7th Cir. 2011) ("A person seeking injunctive relief must . . . ground its right to relief on events described in the complaint, not on matters that arise later."). The Court wishes to make clear, however, that Plaintiff has "no absolute right to expand the case" and the Court has substantial discretion to either permit or deny such a motion to supplement. *Chicago Carpenters*, 644 F.3d at 356. Plaintiff's failure to file an adequately detailed and properly supported motion for injunctive relief, and/or failure to seek leave to supplement his complaint to include subsequent events, may result in his motion being summarily denied.

**B. PLAINTIFF'S MOTION TO COMPEL** (Doc. 74)

Plaintiff filed a motion challenging Defendants' objections to his Requests for Production of Documents and seeking an Order compelling Defendants to produce the documents that he requested (Doc. 74). Although Plaintiff did not indicate which Defendants the Requests were directed to, a review of Plaintiff's motion and the response received suggests that the motion pertains only to the Wexford Defendants (*see* Doc. 74, Doc. 81).

Federal Rule of Civil Procedure 37(a)(1) and the undersigned's case management procedures require Plaintiff to certify that he attempted to confer with defense counsel to resolve the purported issues before filing a motion to compel. There is no indication in Plaintiff's motion that he made any attempt to speak to defense counsel after he received the discovery responses (*see* Doc. 74), and in fact, defense counsel indicates that they never heard from Plaintiff (Doc. 81, para. 4). The Court is mindful that Plaintiff is currently incarcerated and also representing himself in this action, which can present logistical challenges to his ability to confer with defense counsel, but Plaintiff is nevertheless required to attempt to confer and resolve the issue before turning to the Court for help. For that reason, Plaintiff's motion is denied. The denial is without prejudice to refiling after Plaintiff has conferred with defense counsel (if he has not already done so).

Nevertheless, in an effort to assist with the conversation between the parties, the Court will address the substance of Plaintiff's motion. Plaintiff served eight Requests for Production of Documents, which are as follows:

1. Plaintiff is requesting the Wexford Administrative directive Handbook dealing with Illinois medical treatment from 2021 till 2024.

2. Plaintiff is requesting the procedure for Menard C.C. medical treatment process.

3. Plaintiff is requesting the name and position of the person who is in charge of making sound decisions for Menard C.C. Health Care Unit dealing with medical treatment and their procedures.

4. Plaintiff is requesting the procedure dealing with a serious medical injury.

5. Plaintiff is requesting the next procedure to be done when a[n] injury or disease is discovered post testing.

6. Plaintiff is requesting any and all tests and test results dealing with Plaintiff's stomach injury from 2021 till 2025.

7. Plaintiff is requesting the test results and its findings from August 2024, CT scans.

8. Plaintiff is requesting the test results from blood tests done from July 2024 till December 2024, and it's finding.

(Doc. 74; Doc. 81-1).

For Requests 6, 7, and 8, Defendants responded without objection and cited the page numbers of records already produced in this action and another one of Plaintiff's cases: 24-475-DWD (Doc. 81-1). These responses seem perfectly acceptable to the Court. To the extent that Plaintiff contends there is something objectionable or improper about them, he must provide a specific explanation as to what the problem is.

For Requests 1 through 5, the Court agrees with Defendants that the Requests are simply too vague and/or overbroad (*see* Doc. 81, para. 5). More specifically, with respect to Request 1, the Court cannot discern a reason as to why Plaintiff would need Wexford's

entire handbook regarding medical treatment. Much of it would be completely irrelevant to the claims at issue in this action. If Plaintiff is not sure exactly what policy/procedure/guideline he is looking for, he can at least speak with defense counsel and provide them with some general context about what he is looking for and they may be able to pin down what documents he is truly seeking to obtain.

As for Request 2, Defendants indicate that they are simply not sure what Plaintiff is seeking (Doc. 81, para. 11). Neither is the Court. Given all of the possibilities, Plaintiff must narrow this request and be much more specific as to what he is asking Defendants to produce.

For Request 3, the Court agrees that to the extent Plaintiff is requesting the name and position for a particular person, that request is more appropriate to serve as an interrogatory (*see* Doc. 81-1, response to Request 3). To the extent Plaintiff is requesting a document, it is unclear what document (or even what type of document) he is asking for and he must be more specific in describing what exactly it is he is looking for. Once Plaintiff nails down what information he is looking for, he should consider whether his request should be made as an interrogatory or a request for production.

As for Request 4, the Court agrees that it is far too vague. Plaintiff must, at the very least, specify the type of procedure and the particular medical condition that he is asking about.

And finally, Request 5 is likewise too vague and overbroad. Plaintiff must be more specific about what information or what documents he is seeking. At a minimum, Plaintiff must provide more specificity as to the nature of the procedure he is seeking, the

the injury or disease that he is seeking the procedure for, and the type of testing that he is referring to (e.g., lab work, x-rays, CT scan, etc.). As Defendants said, Plaintiff should, at a minimum, be more specific and tailor his request to the allegations in the case.

C. **PLAINTIFF'S "MOTION FOR NOTICE AND MOTION FOR COUNSEL" (Doc. 84)**

Plaintiff begins this motion by telling the Court that he has been "trying to communicate with the defendants" and "obtain policies and procedures pertaining to the medical treatment giving [sic] to me and others at Menard," but Defendants refuse to provide the documents, claiming that he is not entitled to them (Doc. 84, p. 1). Plaintiff goes on to state that he has still been unable to obtain any medical care for the lump on his stomach because all of his requests are denied or ignored (*Id.* at pp. 1–2). He asks the Court to recruit counsel for him to help him with discovery and with getting needed medical care (*Id.* at p. 2).

Plaintiff's issues regarding discovery and his medical care were addressed above in this Order. As for his request for counsel, it is denied at this time because he has not met the threshold burden of showing that he made a reasonable attempt to obtain counsel on his own or was effectively precluded from doing so. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). His current motion does not say anything about whether he contacted any attorneys for representation (*see* Doc. 84), but his previous motion states that he "wrote several attorneys" and did not receive any responses (Doc. 8). Plaintiff did not, however, provide any further information (*see* Doc. 8). The Court requires pro se litigants to contact at least three attorneys regarding representation and provide the Court with the attorneys' names and addresses, an explanation as to how and when the litigant

attempted to contact them, and a copy of their letters declining the request for representation (if available).

## CONCLUSION

Plaintiff Steven Murphy's Motion to Compel (Doc. 74) is **DENIED.** His Motion for Preliminary Injunction (Doc. 75) is **DENIED.** And his "Motion for Notice and Motion to Appoint Counsel" (Doc. 84) is **DENIED.**

IT IS SO ORDERED.

DATED: June 11, 2025

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
